COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
|---|---|---|
| MARIA SHUNTAY HALL, | | No. 08-08-00111-CR |
|  | § | |
| Appellant, | | Appeal from |
|  | § | |
| v. | | 291st District Court |
|  | § | |
| THE STATE OF TEXAS, | | of Dallas County, Texas |
|  | § | |
| Appellee. | | (TC # F-0415146-U) |
|  | § | |

## O P I N I O N

Maria Shuntay Hall appeals her conviction of injury to a child. Appellant waived her right to a jury trial and entered an open plea of guilty before the trial court. The court found her guilty and assessed her punishment at imprisonment for a term of thirty years and a $10,000 fine. The trial court included in the judgment an affirmative deadly weapon finding. For the reasons that follow, we affirm.

## FACTUAL SUMMARY

On August 1, 2004, Jessica Galban took her two-year-old son, Christopher, to Appellant's house and left him overnight. Appellant was living with Christopher's biological father, Konrad Forbes, and had two children of her own. Galban had known Appellant for several years and did not think she had any mental difficulties or an inability to care for her own children. The following morning, Appellant called Galban to tell her Christopher was in the emergency room at Mesquite Hospital because he had fallen and hit his head in the bathtub. When Galban arrived at the hospital, the medical staff told her they were transporting her son by ambulance to Children's Medical Center. After Christopher had a full body CAT scan, the medical staff at Children's

Medical Center told Galban that Christopher required emergency surgery for severe internal bleeding from the liver but they did not expect him to survive.

Dr. Matthew Cox, a child abuse pediatrician employed by the University of Texas Southwestern Medical School, testified about Christopher's injuries. When Christopher was admitted to Children's Medical, he was in critical condition on life support. A CAT scan showed significant liver injury and blood in the abdominal cavity requiring immediate surgery. Lab tests also showed Christopher had suffered internal injuries, e.g., certain liver and pancreatic enzymes were markedly elevated. His kidney function was abnormal and he had elevated muscle enzymes indicating muscle injury. Surgeons found extensive lacerations of the liver and bruising to the mesentery. The child had suffered injuries to his right kidney, pancreas, and small bowel. He also had bruises on his hips, bruises and soft tissue swelling over the middle of his back, and an abrasion on the right side of his face. One bruise on his back looked like a footprint. Christopher also had bruising around his heart and to the heart muscle. In Dr. Cox's opinion, Christopher's injuries were caused by blunt force trauma to the abdominal cavity and he likened the injuries to those seen in a severe motor vehicle collision. A single stomp to Christopher's abdomen would not have caused all of the injuries. Instead, it was his opinion that the injuries were consistent with multiple stomps to the front and back of the child. Christopher remained in the hospital for eight days after the emergency surgery.

Debbie Rule is employed as an investigator by the Dallas County District Attorney's Office. She had previously been employed as a detective in the Crimes Against Children division of the Balch Springs Police Department. In that capacity, she participated in the investigation of this case and interviewed Appellant on the day Christopher was admitted to the hospital. In Rule's opinion, Appellant appeared to understand her and did not appear to have any

mental difficulties during the interview. Initially, Appellant told Rule that Christopher had fallen in the bathtub. Rule told Appellant that the story was not consistent with Christopher's injuries. Appellant then claimed she was playing ball with the child and she might have thrown the ball too hard and hit him in the stomach. Rule again said that this story did not explain the injuries. Appellant then admitted that after Christopher rolled his eyes at her, she stomped him in the stomach one time while he was on the floor. Appellant demonstrated for Rule how she did this and stomped the floor hard. Appellant gave Rule a written statement in which she said that Christopher fell and hit the wall when he got out of the bathtub. She fed Christopher because he was hungry but he vomited. Appellant put Christopher in bed, but when he continued to cry, she placed her foot on the child's stomach and hit it because she was having problems with Christopher's father.

A grand jury returned an indictment against Appellant alleging that she intentionally and knowingly caused serious bodily injury to Christopher Galban, a child younger than 14 years of age, by striking, kicking, and stomping on Galban with her foot, leg, and shoe. The indictment also alleged that Appellant's foot, leg, and shoe were deadly weapons. On July 12, 2006, Appellant waived her right to a jury trial and entered an open plea of guilty before a Dallas County Magistrate. Appellant did not testify at the guilty plea but the State offered into evidence her judicial confession to the charged offense. The magistrate made written findings, conclusions and recommendations in connection with the plea, including that: Appellant is competent; Appellant's confession and stipulation were sufficient to prove a *prima facie* case; Appellant committed the offense as charged in the indictment; a deadly weapon was used; and Appellant entered her plea freely and voluntarily. The magistrate recommended that the case be passed to a later date for a determination of punishment. On February 18, 2008, the district court

conducted a hearing to determine punishment and heard the testimony of several witnesses, including Dr. Cox, Rule, and Appellant.

Appellant testified in support of her request for probation. On the morning Christopher's injuries occurred, Appellant bathed the children after Konrad went to work. Christopher fell in the bathtub and hit his head which caused him to cry a lot. Appellant removed him from the tub, dried him off and dressed him, but he continued to cry. Frustrated by Christopher's crying, Appellant stepped on him because something "just came over [her] body" and she "just snapped". Christopher was on the living room floor crying when Appellant stepped hard on him and kicked him in the side. Appellant claimed that she was not thinking when she did this and something just took over her body. Appellant collapsed on the floor and "blanked out" for a while after she kicked Christopher. When one of her daughters came into the room and called for her, Appellant saw Christopher on the floor. Christopher's eyes were open and looking at her but he was not crying anymore. He was curled up in a ball on the floor. Appellant picked up Christopher and held him until Konrad came in and asked what had happened. Appellant told him Christopher had fallen and hit his head but she did not tell him what she had done because she was afraid of what might happen to her. They took Christopher to the hospital. Appellant called Galban but did not tell her what had really happened because she did not want to shock Galban and she was afraid to tell the truth. When asked why she stomped on Christopher, Appellant claimed that she did not intend to hurt him but she could not handle the constant crying. When asked why she should not go to prison, Appellant stated she understood that what happened was wrong but she was stressed out because of the way Christopher's father had been treating her. Appellant testified that she might be bipolar and thought this might explain why she sometimes snapped.

Dr. Jack Price, a clinical and forensic psychologist, testified for the defense. Dr. Price administered a series of tests on Appellant and determined that her full scale intelligence quota is 65, her verbal IQ was 65 and the performance IQ was 73. The full scale IQ of 65 is lower than 99 percent of the population. Based on the tests, Dr. Price concluded that Appellant is low in intelligence and falls in the range of mild mental retardation. He believed Hall could function adequately in prison if placed in a unit for mentally retarded offenders but she could also do well if placed on probation with adequate supervision, particularly in times of stress, and had only highly supervised contact with children.

At the conclusion of the hearing, the court accepted Appellant's guilty plea and assessed Appellant's punishment at imprisonment for a term of thirty years and a $10,000 fine. Appellant filed a general motion for new trial asserting that the verdict is contrary to the law and the evidence. The court denied the motion for new trial. This appeal follows.

## VOLUNTARINESS OF THE GUILTY PLEA

In Issue One, Appellant assails the voluntariness of her guilty plea. Relying on her testimony from the punishment hearing, Appellant asserts that she did not have a complete understanding of the charge against her and did not know that she must have committed the offense intentionally or knowingly. She reasons that her guilty plea was not made knowingly and voluntarily and she implies that the trial court erred by accepting her guilty plea.[1] The State initially responds that the issue is not preserved because Appellant did not seek to withdraw her guilty plea.

---

[1] The issue presented on appeal is not framed in terms of the trial court committing error, but Appellant cites to Article 26.13(b) in the body of her argument. That statute prohibits the trial court from accepting a plea of guilty or nolo contendere unless it appears that the defendant is mentally competent and the plea is free and voluntary. TEX.CODE CRIM.PROC.ANN. Art. 26.13(b)(Vernon 2009).

*Preservation of Error*

Generally, a party raising a complaint on appeal must have made a timely and specific objection in the trial court and the court must have ruled on the objection. TEX.R.APP.P. 33.1(a); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex.Crim.App. 2004). Except for complaints involving systemic or absolute requirements, or rights that are waivable only, all other complaints, whether constitutional, statutory, or otherwise, are forfeited by failure to comply with Rule 33.1(a). *Id.* at 342. The issue before us is whether Appellant forfeited her right to complain on appeal about the voluntariness of her guilty plea because she did not ask the trial court to withdraw her guilty plea. The Court of Criminal Appeals' decision in *Mendez v. State* informs our decision.

In *Mendez*, the defendant entered a plea of guilty before a jury to the charged offense of murder and the parties proceeded to introduce evidence relevant to punishment. Mendez, who was fifty-four years of age, testified about his sexual relationship with the sixteen-year-old victim and the murder. The victim ended the relationship and Mendez stayed drunk for three or four days and used methamphetamine. After the victim made taunting telephone calls to him, he put a handgun in his pants and went to the victim's place of work. When the victim locked the doors, he shot the lock to get in and "just went crazy." Mendez shot the victim in the head. At one point in his testimony, Mendez stated he did not intend to kill her. The jury found the defendant guilty of murder; it did not find that Mendez acted under the immediate influence of sudden passion arising from an adequate cause, and it assessed punishment at imprisonment for a term of 99 years. On appeal, Mendez argued that the trial court should have *sua sponte* withdrawn his guilty plea after the testimony raised an issue as to his guilt. The Eastland Court of Appeals sustained the issue and reversed. *Mendez v. State*, 42 S.W.3d 347 (Tex.App.--Eastland 2001). The Court of Criminal Appeals held that Mendez did not preserve his complaint in accordance

with Rule 33.1 by requesting that the trial court withdraw his guilty plea. *Mendez*, 138 S.W.3d at 339. Under the Code of Criminal Procedure, a defendant has a right to plead not guilty, but the right may be waived and the defendant may plead guilty or *nolo contendere*. *Mendez*, 138 S.W.3d at 343; TEX.CODE CRIM.PROC.ANN. art. 27.16(a)(Vernon 2006); TEX.CODE CRIM.PROC.ANN. art. 27.02. If a defendant refuses to enter a plea, the plea of not guilty must be entered. TEX.CODE CRIM.PROC.ANN. art. 26.12. Thus, a defendant's right to a plea of not guilty is a "waivable right" and "must be implemented by the system unless expressly waived." *Mendez*, 138 S.W.3d at 343-44. The waiver of the right to a plea of not guilty is surrounded by procedural protections both constitutional and statutory. *Id.* at 344. The waiver of that right may entail the waiver or abridgement of other rights. *Id.* It is fitting that trial courts have a duty to implement those rights, which shield each defendant at the outset of every criminal proceeding. *Id.* at 350. But after a court has fulfilled those duties and a defendant has made a valid waiver of those rights, it is appropriate that the defendant be required to take some affirmative action to don the armor again. *Id.* In *Mendez*, the defendant did not waive his right to trial by jury, but he did waive his right to a plea of not guilty. *Id.* Further, Mendez did not assert that there was any error in the proceedings leading up to, and including, his plea of guilty. *Id.* The court found it reasonable to put upon such a defendant the requirement of timely seeking, in one way or another, to withdraw the plea of guilty. *Id.* Because Mendez did not do so, the court held he could not complain for the first time on appeal that the trial court did not do it for him. *Id.*

The State acknowledges that Appellant is not making precisely the same argument as the defendant in *Mendez*, but it maintains that Rule 33.1(a) should apply to Appellant's complaint that the evidence admitted during the punishment hearing showed that her plea is involuntary. The Dallas Court of Appeals has applied *Mendez* to an argument that the trial court erred in

accepting the defendant's guilty plea when evidence admitted during the plea proceeding showed the defendant did not understand the nature of the charge against him. In *Wilson v. State*, the defendant entered pleas of not guilty to two counts of robbery and guilty to one count of aggravated robbery. *Wilson v. State*, Nos. 05-05-01100-CR, 05-05-01101-CR, 05-05-01102-CR, 2006 WL 1892381 (Tex.App.--Dallas 2006, pet. ref'd)(not designated for publication). The trial court admonished Wilson of his statutory and constitutional rights both in writing and orally at the plea hearing and the court accepted Wilson's guilty plea. Several weeks later, the court conducted a punishment hearing. Wilson testified that he had a small rock, not a brick as alleged in the aggravated robbery indictment, but he stated that it was a weapon and made the offense aggravated robbery. He did not file a motion to withdraw his guilty plea or a motion for new trial. On appeal, he argued that the trial court erred by accepting his guilty plea because his testimony at the punishment hearing showed he did not understand the deadly weapon element of the aggravated robbery charge, thereby putting into question the voluntariness of his guilty plea. The Dallas Court of Appeals noted that like the defendant in *Mendez*, Wilson did not argue there was error in the proceedings leading up to, and including, his guilty plea. *Wilson*, 2006 WL 1892381 at *3, *citing Mendez*, 138 S.W.3d at 350. The record also reflected that Wilson was fully admonished of his rights. The court of appeals held this was a prima facie showing that the guilty plea was knowing and voluntary, and the burden shifted to Wilson to show he did not fully understand the consequences of his guilty plea such that he suffered harm. *Wilson*, 2006 WL 1892381 at *3, *citing Mallet v. State*, 65 S.W.3d 59, 64 (Tex.Crim.App. 2001) and *Kirk v. State*, 949 S.W.2d 769, 771 (Tex.App.--Dallas 1997, pet ref'd). The court of appeals acknowledged that Wilson did not argue that the trial court should have sua sponte withdrawn his guilty plea, but it held that Wilson's claim that his guilty plea was involuntary based on the testimony at the

punishment hearing could not be raised for the first time on appeal. *Wilson*, 2006 WL 1892381 at *3, *citing Mendez*, 138 S.W.3d at 350. We agree with the rationale of *Wilson*.[2]

The record before us establishes that Appellant entered a plea of guilty after being admonished by the trial court in accordance with Article 26.13 and after being advised by her attorney. She did not at any time after the initial guilty plea ask to withdraw her plea of guilty. Even after she testified at the punishment hearing, Appellant did not seek to withdraw her plea of guilty. Instead, she argues for the first time on appeal that her guilty plea was involuntary based on her testimony at the punishment hearing. We conclude that Appellant may not raise this issue for the first time on appeal. *See Mendez*, 138 S.W.3d at 350; *Wilson*, 2006 WL 1892381 at *3; *see also Neely v. State*, No. 2-07-254-CR, 2008 WL 1932140 (Tex.App.--Fort Worth, May 1, 2008, no pet.)(memorandum opinion)(not designated for publication)(applying *Mendez* to contention that the trial court should not have accepted the defendant's guilty plea because evidence admitted during the guilty plea hearing showed the defendant lacked the necessary intent to support his conviction; holding that because the defendant did not ask to withdraw his guilty plea, he may not complain for the first time on appeal that the trial court erred by accepting his alleged involuntary plea). We overrule Issue One.

## DUE PROCESS VIOLATION

In Issue Two, Appellant complains that her right to due process was violated because the trial court failed to function as a neutral and detached judge during the punishment hearing. She alleges that the judge relied on her own experience of what force was required to cause the child's injuries and not the testimony adduced at the punishment hearing. At the conclusion of the punishment hearing, the trial court stated:

---

[2] Even if we were to disagree with *Wilson*, we would be required to follow it pursuant to TEX.R.APP.P. 41.3.

> This is as violent as it gets. I watched you through this entire proceeding and listened to the witnesses. I know from my experience the amount of force that's necessary to cause those injuries to a child like that. It's unbelievable. So the Court accepts your plea of guilty and sentences you to 30 years in the penitentiary and a $10,000 fine.

Due process requires a neutral and detached hearing body or officer. *Gagnon v. Scarpelli*, 411 U.S. 778, 786-87, 93 S.Ct. 1756, 1762, 36 L.Ed.2d 656 (1973); *Brumit v. State*, 206 S.W.3d 639, 645 (Tex.Crim.App. 2006). A trial court denies the defendant due process when it arbitrarily refuses to consider the entire range of punishment for an offense or refuses to consider mitigating evidence and imposes a predetermined punishment. *Ex parte Brown*, 158 S.W.3d 449, 454 (Tex.Crim.App. 2005). A reviewing court presumes the trial court was neutral and detached absent a clear showing to the contrary. *Brumit*, 206 S.W.3d at 645.

Appellant concedes she did not object to the judge's comment but maintains she is not required to object under the authority of *Blue v. State*, 41 S.W.3d 129 (Tex.Crim.App. 2000)(plurality op.). In *Blue*, a plurality of the Court of Criminal Appeals held that a trial judge's comments "which tainted [the defendant's] presumption of innocence in front of the venire, were fundamental error of constitutional dimension and required no objection." As a plurality opinion, *Blue* is not binding precedent. Further, the judge's comment in the instant case does not rise to the level of the comments in *Blue*. Thus, Appellant was required to object to preserve error. *See* TEX.R.APP.P. 33.1; *Jasper v. State*, 61 S.W.3d 413, 421 (Tex.Crim.App. 2001). Even if the complaint had been preserved for our review, the trial judge's comment does not overcome the presumption that the court was neutral and detached. Although the judge apparently had some knowledge of or experience with the types of injuries suffered by Christopher, the judge also referred in her comments to the witnesses she had heard during the hearing. The witnesses included an expert witness who testified regarding the nature of Christopher's injuries and the

significant degree of force required to cause them.  Because Appellant has not overcome the

presumption that the trial judge was neutral and detached, we overrule Issue Two and affirm the

judgment of the trial court.

February 24, 2010

        ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)